You were in front of the first district, uh, first division of the first district appellate court of Illinois in the case of the people of the state of Illinois versus you here now. Okay. Do we have both lawyers here? Yes. Yes. They're both here. All right. So we're here for the people of the state of Illinois versus Darren Rouse 2022 ill at first two one zero seven six one. As you both know, you're intimately familiar with all the issues and the facts here. We're going to be dealing with three issues, all involving the, uh, allegation of ineffective assistance of trial counsel. The first one for interfering with this right of a jury trial number two, failing to prepare and present his testimony and three for failing to call the defendant's sister to testify. Uh, let's hear first from the appellant. Uh, thank you, your honor, assistant appellate defender Gavin Dow on behalf of Darren Rouse. Uh, just to, I want to thank the court for its patience. Uh, I was away from my office for a moment when, uh, Mr. Schaffer called me and I hurried back. Uh, we got, we got too early, so no problem there. We're happy. Thank you. Um, may it please the court. Uh, the court is obviously aware that this case does involve those, uh, those three claims in effect of assistance of counsel that, uh, was just mentioned. Um, and I, I intend to talk about each one of those individually, but at the start, there's one point that is sort of encompasses the two primary ones, which has to do with, uh, Mr. Rouse's decision not to take a jury trial and Mr. Rouse's decision not to testify. Both of those implicate constitutional rights, but I want to be clear. We're not claiming that those rights were actually denied to Mr. Rouse. Instead, the claims are that counsel did something or said something that was professionally unreasonable. And as a consequence, Mr. Rouse made a decision as to whether to exercise those rights, that was prejudicial to him. Was that a private attorney or a public defender? I believe it was the public defender, your honor. Okay. Go ahead. Thank you. Uh, I don't know. You know, did I, did I do this again? You've got, uh, justices, uh, uh, Hyman and Puchinsky also with me here today. Go ahead. Thank you. So what I'll do at this point is just briefly go over each of those claims. At the trial, he had a private attorney until, um, sentencing according to my notes. Okay. Thank you, your honor. I appreciate the correction. Whenever that, when I was right, I'm sorry. I'm sorry. Is that right? My justice, Simon, justice Lavin, did you read it differently? I found it difficult to find that information. Yeah. All right. Well, let's go with what you said that it was a public defender. You know what your honor, I think you're, I think you are correct about that. My, my notes do reflect the attorney with public defender at the time of the judgment, which of course is the sentencing. Uh, and I apologize for the confusion. Okay. Um, so what I'd like to do is just briefly go over each of these claims, uh, and explain them to the court. And obviously if the court has questions, I'm happy to answer them. Uh, the first has to do with Mr. Rouse's decision on to take a jury trial. Um, now we are at the second stage of post-conviction proceedings, which means that the, the allegations of Mr. Rouse's petition are to be deemed true. Um, and he alleged essentially that he was talking to his, his lawyer about whether to take a bench trial or jury trial. And his lawyer informed him that if he decided to take a bench trial, uh, she would not be able to represent him. Uh, and as a result, Mr. Rouse was under the impression that he had essentially a false choice. He could either exercise his right to a jury trial and not be represented, or he could go with the bench trial and enjoy his right to legal representation. Uh, faced with that choice, Mr. Rouse, uh, chose to keep his lawyer and take a bench trial. But isn't, isn't the most important point here was the admonitions from the judge, which neglected to inform Rouse, uh, that it was his decision and his decision alone that was never stated to him, wasn't it? Well, I think the important thing about the admonitions, your honor, is that he was not told that he would be represented by counsel at a jury trial. Uh, and as a result, he was under the misapprehension that he was, he would have to go pro se and represent himself. And was this again, was this a public defender, uh, making these representations or a private I apologize for not being certain about that. Um, let me ask you, does it matter in your, in your, on your, what is your position? Does it matter whether it's one or the other? Well, no, no, your honor, it doesn't matter whether it was one or the other, because either way his right to the effective assistance of counsel, uh, remains the same. Uh, in terms of the, the jury waiver claim, uh, prejudice is shown simply by the fact that there's a reasonable probability that he would, would have taken a jury trial had he been given competent advice. So he doesn't need to show that the outcome of that trial would have been any different. Is the state, is the state questioning prejudice? Well, I'm sure we'll hear from the state on that. Well, no, I'm, I'm asking Mr. Dell. Um, on that point, I don't, I don't believe so your honor. Um, but I, you know, I don't want to speak for the state. If this court were to reverse though, we would have to make that determination ourselves. Wouldn't we? Which determination is that your honor? I'm sorry. Uh, the one we're talking about here, whether or not, uh, he was, uh, entitled to a jury trial. Um, well, certainly he was, he was entitled. He had a right to the admonition was correct. Oh yes. Um, yes. Based on the record, you would look at the record just to verify that that's not contradicted by the record, but it isn't. Uh, there's nothing in the admonitions, uh, correcting Mr. Rouse's misapprehension, which was caused by counsel's deficiency, uh, that if he chose to exercise right to a jury trial, he would have to represent himself. And in your judgment, uh, obviously you must think that, uh, the deficiency of counsel's part relative to Strickland was objectively unreasonable. Explain to us what the basis for that would be. But the basis is fairly simple. Your honor, uh, if you were representing a client, um, you have to be prepared for the possibility that he's going to want to exercise his right to testify. And if that basically requires you to know your client's side of the story, that's something that you should know in every case, even if you don't expect your client to testify. Uh, I would point out that there is no evidence here that they had discussed the matter beforehand and that Mr. Kraut, uh, Mr. Rouse had said he wasn't going to testify and then changed his mind at trial. All we have is that Mr. Rouse indicated at trial that he wished to testify, at which point counsel spoke to him off the record. Well, but didn't the defendant specifically, uh, tell the court that he did not, uh, uh, there were no threats or promises that led him to choose the bench trial. Yes, he did your honor. But that doesn't, doesn't that close the issue? It does not your honor, because that does not contradict, uh, his claim essentially whenever I'm sorry, his claim is, isn't his claim here that his attorney threatened to withdraw. So that's a threat. Uh, your honor, his claim is that his attorney told him that if he elected to take a jury trial, he would have to represent himself because counsel would withdraw. Uh, now you, you are looking at that might construe that potentially as a threat, but Mr. Rouse, uh, did not. In fact, in Mr. Rouse's petition and in his accompanying affidavit, uh, he described it simply as his attorney admonishing him. You know what, you know, if he didn't say it was a threat in his petition, why should we be considering that now? Well, I don't think you should be your honor. I mean, I think ultimately the fact that Mr. Rouse said that he wasn't threatened is entirely consistent with his claim. Uh, so at the end of the day, it doesn't matter. Is threatening to withdraw the same as telling the defendant that he could not have his choice of a bench or a jury trial? No, I think that those two things would be different. Your honor. How so? Because one of them has to do with, so it's the question of whether the defendant understands that it's his choice or not. And that just simply means, does the defendant know that at the end of the day, whatever anyone else says, he gets to choose venture jury. Uh, and that, and that's different from Mr. Rouse's claim here, which is that he understood he had the choice, but that he made that choice under a misapprehension that if he chose a jury trial, he would not be represented by counsel. And that was in his original petition. Yes. Yes, your honor. Proceed. Thank you. Uh, if the court has further questions on that claim, I'm happy to take them. Otherwise I'm going to move on to the second major claim that Mr. Rouse raised in his petition, which is that counsel failed to prepare for him to testify, which led to him not exercising his right to testify. Once again, it's the same pattern here. It's not a situation where Mr. Rouse didn't understand that the choice, whether to testify was his it's that counsel did something specifically told him off the record. You know what? Uh, I'm not ready for you to testify. I'm not prepared to do that. Uh, if we do that, it'll make me look bad. Go along with me on this, please. Um, because counsel was not ready to question him, Mr. Rouse decided to go along and he changed his mind about testifying. Uh, so counsel not being prepared and counsel advising her client, Hey, you shouldn't testify because I'm not ready. Both of those were objectively unreasonable under Strickland. So the question becomes prejudice and prejudice here is, uh, it's pretty straightforward. We have, what was the argument of the state here? Wasn't the state's sole argument here, uh, that his petition was deficient in making this claim? Wasn't that his argument wasn't prejudice or Strickland. It was deficiency of his petition. Yes. As I understand it, that was the, the, the state. So why don't you argue that? I mean, as we lay out in our briefs, we, our position is that this claim was raised in the petition. And the reason it was raised in the petition is that the, the factual basis underlying it for one thing is in the petition. He specifically alleged that, uh, this conversation took place where counsel said that she was not prepared. Um, the second, Mr. Rouse's position does cite cases having to do with, uh, the duty of an attorney to consult with his or her client. And that once the end goes to whether or not the, uh, counsel failed to prepare for the eventuality that Rouse would choose to testify. Uh, so those allegations are there despite anything else that might also be in the petition. And that's enough to at least raise the issue for the court to decide. What's your understanding of the state's argument with respect to the deficiency prong and the prejudice prong in Strickland? With regard to this claim? Yeah. Well, again, I, I understood the state as, as arguing that, um, it wasn't, it wasn't raised in the petition. What about prejudice? If we were to reverse on this issue, we would have to find prejudice, right? Yes, your honor. That's correct. Okay. So in terms of prejudice, that's pretty, it's pretty straightforward. We have in the record, uh, an affidavit from Mr. Rouse that details what his trial testimony would have been. Uh, that testimony would essentially contradict the testimony of the state. He would have said, one, I wasn't the robber. Two, I basically was swept up while I was just trying to walk to the train station. Uh, three, the, the things that they found on me, they didn't actually find on me. Now it's important that we're at the second stage because at the second stage, there are no credibility determinations. We take the allegations as true. And that means in this case, accepting Mr. Rouse's proposed testimony, which if believed by a judge or jury, uh, would certainly have led to his acquittal. Okay. Um, stepping back for a moment, just to the question of whether or not this failure to prepare claim was actually raised in the petition. Um, again, as we do argue in the briefs, if the court were to find that it wasn't raised, it's a very clear instance of, uh, unreasonable assistance of post-conviction counsel. That's because there's only one other way to read or plausibly understand this claim, uh, which would be the Mr. Rouse had his right to testify, uh, essentially taken away from him by counsel that he wasn't able to make that choice. Let me ask you that what is the test though, for satisfying the Strickland prejudice prong as to a claim that counsel's lack of preparation prevented him, the defendant from, uh, testifying. Does he have to that he would have testified otherwise? Uh, does he have to show that as a result of the trial that does he have to show that the result of the trial would have been different? If he had your honor, I believe that the answer is that he has to show that the result of the trial, there's a reasonable probability, probability result of the trial would be different. He obviously doesn't have to show that it would have absolutely came up, come out the other way, just that it was reasonably probable, uh, to the points that, uh, we can't have confidence in the here. Uh, on the record, he said he wanted to testify. He changed his mind after he found out counsel wasn't ready. And we know his testimony, if believed would have resulted in his acquittal. Well, he really changed his mind when counsel said, Hey, I'm going to quit. And then the dependent realized I have no idea what I, how I should conduct myself. If I am testifying, is it more accurate because counsel didn't prepare him for that? So counsel's lack of preparation to, for him to testify. So that at the point that he was asked, do you want to testify or not? He had a true either or either. I will testify. I won't testify, but I'm ready for both the fact that you're saying the fact that counsel didn't prepare him to testify, nullified that choice. And he really didn't have a choice because, you know, he's going to have to go in blind. If he said, yeah, I want to testify, you'd have to go in blind. He would have no idea what, what was, what was coming at him. Well, I think that that's probably accurate. I don't think that he expressly, uh, alleged that he had, as you put it, your honor, no idea what was coming at him necessarily. But yeah, counsel said that she wasn't ready. Uh, and you know, based on that, Mr. Rouse decided that, okay, it may be not, isn't a good idea to testify. Now that I understand council's not ready to question me, uh, I guess that's not a good idea. So even though I wanted to testify now, I'm not going to, okay. Uh, just going back very quickly to whether the claim was raised, uh, because the only other way to read this petition, this claim would be as actually having the right to testify taken away from him or him, not understanding that he could choose to testify, uh, that would have been contradicted by the record, uh, under now. And a reasonable post-conviction attorney would have understood, okay, if this isn't raised in the petition as a failure to prepare, it needs to be because that's actually what it is. That's what the allegations support. And that's a legal at this time. Uh, number three. Yeah. You're going to do the tale of eyewitness. Oh, sure. I'll, I'll briefly touch on that one. Uh, the reason that I didn't bring that up on my own, your honors is that at the end of the day, counsel's failure to investigate or call Mr. Rouse's sister essentially means that he was denied corroboration for what his testimony would have been. Had he corroboration, uh, isn't, it isn't strictly necessary because we can just go with Mr. Rouse's testimony. Um, but yes, that is there as well. Uh, that, that does add to the prejudicial effect of counsel's failures. Go ahead. With regard to the sister though, um, is the defendant's statement in his affidavit that his sister could verify he had the money on the day in question, the same as an offer by her to testify. Was there ever an offer that she ever indicate, uh, that she was going to testify? Uh, we would have to look at the particulars of her affidavit, uh, which was attached to the original pro se petition that was filed. All right. Well, it's your appeal. So yes, yes, it is your honor. We're going to call them on you. And that's, uh, it's something that I, that I don't know off the top of my head. I'm sorry to say, let me ask this question a little differently. Does it matter whether she offered or not? Is there any case law in Illinois that says she has to say, I want to testify. Wait, did he ever tell the attorney that he wanted his sister to testify? No, but that's not the question I'm asking. My question is, does it matter whether her, whether she put in an affidavit, she, she wants to testify or not? Is there any case law in Illinois that says that's required? Um, I don't know the answer to that, your honor. Uh, that's something that, but I, I think we do also have to know whether he ever told his attorney, Hey, get my sister on the stand. She's going to tell you I had this money. Did he ever tell the attorney? I'm not seeing that in his affidavit. Maybe I'm missing it. It's an affidavit. And she didn't say in her affidavit that she would testify. That's correct. Your honor. She did not say anything about testifying in, in her own affidavit. That's, that's a problem. Don't you think as it relates to this third issue? Um, I, well, if the court thinks it's a problem, I suppose it's a problem. No, I'm asking you why, why would, well, if you want to disagree, I don't have a problem with you disagreeing. Of course. I'm just, I'm just thinking through the question. Let me, let me ask you a question. Let me ask you a question while you're thinking, because this may help you think, Oh, why would she submit an affidavit if she wasn't willing to testify? Objection leading. You may answer the question. Uh, well, you make a good point. Uh, there would be no reason to, to submit that affidavit. If she wasn't willing to testify, there's no reason to think that she wouldn't have testified, but we sort of fear of perjury. Well, wait, no, no. Let's not get there yet. Let's figure out if the attorney ever knew that there was a potential alibi witness, the sister at all. Did he even know the sister existed? Did the dependent tell him that I have a sister who with this money, call her. Cause if you can't get past that, then, then you can say, Oh, is the sister willing to testify? The sister's going to say yes or no, or yeah. Or, you know, or I don't remember the facts or whatever, but first you have to figure out to figure out if this attorney was ineffective for not calling alibi witness. You don't necessarily have to know whether the alibi witness was willing to testify. You have to know whether the attorney knew there was an alibi witness that might testify. So did the defendant ever tell him? At the very least, I think that's implicit in the claim. How is that implicit in the claim? You know, because there's no indication that his petition alleged that defense counsel did not contact his sister. That's not in the petition. Well, then I suppose that I would have misunderstood the petition. I'm a little bit at a loss here. I'm sorry, your honors. His position did claim that his attorney was ineffective for not, for not calling his sister and implicit in that kind of claim is either that the attorney was aware of his sister or the attorney was otherwise told that he should talk to. When you say not calling, and I don't want to get into parsing, but when you say not calling, you mean not calling as a witness, right? I do mean not calling as a witness. Yes. Yes. That's a distinction with a difference, right? Calling as a witness versus calling on the phone or contacting. Those are two different things. Those are two different things. Yes, your honor. I have no further questions. Neither. Okay, let's hear from the state. May please the court and counsel read the stats from the state's attorney's office for the people. If I could, I'd like to try and address some of the questions that have come up, and then I'd like to address some of the things in the reply brief. We haven't had a chance to respond to, and I think that will help clear up some confusion about some of these claims. And I apologize in advance. It's lengthy, and I hope the court can grant me a little leeway in terms of time. First, Justice Paczynski, you had asked whether this was a private attorney. I believe it was a public defender. I'm looking at R31. That's the front page of the transcript of the bench trial. It's listed as Dina Singer, assistant public defender. I believe that is correct. I believe she's now private, but I think she was public then. Justice Hyman. Can a public defender say I'm going to withdraw if you want one kind of case or one kind of trial or another? I mean, is that in their code of ethics that they're allowed to do that? I don't even know. I don't know the rules. I have read transcripts where public defenders have been substituted with other public defenders based on a breakdown in attorney-client relationship. And of course, if there was some timing concerns about this trial and this attorney had a timing conflict, of course, she would need to be replaced by a public defender. But again, our position is this didn't occur. This is rebutted by the record. Petitioner said she didn't make any threat to withdraw. Justice Hyman. She didn't make any threats. He may not have interpreted her saying that she was going to withdraw as a threat. Well, on that point, Your Honor, I would note there is an argument in the reply brief about this and says that, you know, this claim is not premised on the notion that counsel made any threats. That is just not true. That is exactly how petitioner framed that claim in his response to the people's motion to dismiss. In that filing, petitioner argued, quote, Petitioner Rouse contends his counsel threatened to withdraw if he did not agree to a bench trial. That's at C-147. And I need to apologize to the court and counsel. This passage is quoted in our brief at page eight. We miscited the record. We cited C-102. It's actually C-147. But the quotation itself is correct. So the bottom line is petitioner argued in the trial court that his counsel threatened to withdraw. So he can't now say that wasn't his claim. I would also add there's no evidence in the record that he didn't understand the question or that he didn't know what a threat was. You know, his brief on this only says a couple of things, which is that, you know, he'd never been to trial before. And he says he, quote, wasn't aware that he could have brought this to the court's attention. Well, that explanation just doesn't make sense. The court was asking, have you been threatened? This was the time to mention it. He doesn't explain why he would have told the court he wasn't threatened. Well, if you're afraid that your attorney is going to walk out on you, then I can see where he'd be sort of like, was I really threatened? I mean, she threatened me any physical damage? No, she just said she's going to walk out on me if I say I want, you know, one kind of trial over another. So I better do what she says. I'm a guy who's been in the criminal justice system before. I can understand why this would be very intimidating and pretty scary, really. Well, on that point, you know, this is another area where the reply brief is a bit confusing. The reply brief says the claim is that counsel was ineffective for, quote, telling petitioner he had to choose between a jury trial and a lawyer. That's completely wrong. Petitioner has never alleged that counsel told him that he would be pro se or that he had to thought that for reasons that he does not explain at all. This is at C-105. He says he was under the impression he'd be pro se, but there's no reason for him to thought that. And there's certainly no claim that counsel ever said anything like that. That's a new claim raised in reply. Aren't we going to find that out at the third stage? I mean, the attorney will testify and we'll find out what the facts are. We don't determine the facts at this juncture. We take true. Of course, I'm just pointing out the petition doesn't allege counsel said this. The reply brief mistakenly states that that's the claim, but actually the petition just alleges counsel threatened to withdraw if he didn't take the bench and that he somehow thought that meant he would be pro se. Another thing I need to mention about the reply brief, it says the claim is that counsel gave bad advice. That's not right either. Petitioners never claimed he got bad advice. His affidavit lists three pieces of advice counsel supposedly gave about the bench trial. One was that the people's case was strong, which it was. Two was that she recommended the bench. And three, when petitioner told her he had heard that it was harder to win an appeal from a bench than a jury, she said that was a myth. So that's the advice. Petitioners never alleged that any of that advice was a deficient performance. So this argument in the reply that it's something about advice is not right. The claim is just that counsel supposedly threatened to withdraw if he didn't take the bench. This analysis is simple because this is a textbook case of a claim that's rebutted by the record. We have the very same witness. But what we don't have here is the judge did not admonish Mr. Rouse that it was his decision, his decision alone. You agree with that? The judge did not make that admonishment, correct? I believe that's correct. And we are not making a nap argument here. We are just making a very strict, very specific rebutted by the record. He's claiming X. He said not X at trial. Okay. And we're supposed to take the allegation very liberally in favor of the petitioner, right? So you're taking a strict view in the law since we take a liberal view. Is that right? Well, at this stage, at the second stage, he needs a substantial showing. And he's on the record telling the trial judge he wasn't threatened. There would be no reason. He can't claim he wasn't threatened and then say something different in post-conviction. These are exactly the exact opposite. It's the same witness. And it's petitioner himself. So there's an element of estoppel here. He can't come back and say, oh, I was lying to the judge. I actually was threatened. I just decided not to mention it. Okay. Counsel, we have a trial judge who has tried thousands, presided over thousands of criminal court cases. And my question to you is what are the standard admonitions that are supposed to be given under these circumstances with the defendant trying to make a knowing and understanding choice of a bench trial over a jury trial? What are the standard admonitions? I apologize. I don't know those offhand, but again, there's no allegation here that the admonitions were insufficient. The only issue here is it did what he, as we've briefed it is, did what he said in open court in a solemn colloquy where he's being asked questions by the trial judge. Did that rebut his current claim? And our position is it did. Did anyone threaten you to choose a bench trial? No. You're choosing a bench of your own free will. Yes, sir. Now, he says in his words, in his response to our motion to dismiss, counsel threatened to withdraw. It's the exact opposite claim. But the fact, the fact is he didn't give all the admonitions weren't given. But let's go back to something you've said that you said you're not making a nap claim here. Is that what you said? I heard you say just a minute ago. Is that correct? Not yet. Well, wait, that's what you say. Is that what you said? Yes or no? I might need to let her come under. True. So NAP does bar the second claim, which is the failure to prepare him to testify. NAP is a product of the fact that it's the specific right at issue is a right that you have to contemporaneously assert. And that's why under NAP, an on the record waiver of the right to testify completely forecloses any claim of ineffective assistance in connection with the right to testify. We are not reading that proposition to extend to the waiver of other rights. But wait a minute. You just said it's the second issue. What I heard you just say, even though you cited in the first issue, OK, it's under Section A petitioners claim that his counsel threatened to withdraw if he chose a jury trial is positively rebutted by the record. That's A. So don't tell me B when it's A. I apologize. I think we cited NAP there for a proposition that claims that are rebutted by the record are foreclosed. And that's true. NAP talks about two things. It talks about this sweeping waiver with respect to the right to testify, but it also talks about things that are rebutted by the record. Our argument on claim one is it is rebutted by the record in the very strict sense that he said the exact opposite thing. I'll move on to claim two, which is ineffective assistance for failure to prepare a petitioner to testify. Now, this is a claim that wasn't in the petition. And I would refer the court to there's a few places in petitioner's brief where he acknowledges this problem, pages 12, 28, and 30. His concessions there are correct. This claim was not raised. Now, he does say counsel was unambiguously wrong. He said he didn't unambiguously spell out the failure to prepare a claim. And it could instead be read to raise a claim that counsel usurped his decision. Yeah, but why don't you read before that? The paragraph before that is the one I'm referring to. That's the number or less paragraph. Before that, he says, Rouse maintains that his pro se amended petition, which alleged, among other things, trial counsel's failure to consult adequately with defendant amounts to ineffective of counsel, sufficiently raised the failure to they do raise it, and then they have an alternative argument in section three. And you seem to be omitting the recognition of an atonement argument and ignoring that. I apologize, Your Honor, I think I was unclear. I understand it's an alternative argument. I simply meant to point out that some of the concessions in the brief point out why our argument that this claim wasn't raised is strong. It's making that's not a concession. When it's an alternative argument is when you make alternative arguments, are you conceding? Is that is that the state's position? So every time I read an alternative argument, you're conceding something? Yes or no? The specific points? Yes. I'm asking you is when somebody makes an alternative argument, such as the state. Is that a concession? No, Your Honor, he can make alternative arguments, of course. If the court's concerned that this claim wasn't added by post-conviction counsel, there is no reason to be concerned here. You know, we get the presumption that counsel performed reasonably because counsel filed a 651c. Counsel doesn't have to add new claims. The only exception is adding a Strickland claim to excuse a procedural default of an we have here. But most importantly, this failure to prepare claim would have been meritless. This would have been barred by now. The holding of now is that an on the record waiver of the right to testify forecloses any ineffective assistance claim in relation to the waiver. NAP is mandatory authority here. It's on all fours with petitioners case. It completely for this proposition, do you? I don't recall if we cited in front of me. I'm telling you, I don't see it there. Only place I see NAP is an A. But NAP is out there and you're relying on the correct. Very good. Yes, Your Honor. We're just pointing it out as an alternative ground to affirm if the court disagrees about the claim being raised. So you're making a new claim at oral argument that you didn't make in your brief. Is that correct? Yes or no. It's either in your brief or it's a new claim. I don't think adding a case is not making a new argument. Um, excuse me, I'm asking counsel the question. I don't believe we specifically made this argument, Your Honor. Okay, thank you. Um, so in addition to being NAP barred, this second claim that wasn't raised in the petition would also fail because there's no evidence as to what petitioners testimony would have been. Now, I believe petitioners argued in his briefs or at least in his reply and just now that his affidavit sets forth his proposed testimony. That is absolutely not true. In fact, the petition specifically says that petitioner is not going to set forth his proposed testimony because he doesn't want to give the states a heads up in terms of cross-examining him. Now, this is at page C100 of the brief. He says, quote, in order to not provide the state with too much information that would prepare them for the cross-examination of petitioner after he testifies, petitioner reserves the right to later give this honorable court a detailed statement of what his testimony would have been. Where are you citing C100? This is page C100 of the common law record. This is the amended petition. He goes on record very clearly and says, I'm not giving you my proposed testimony. I don't want to give you a heads up. I'm going to tell you later. Well, that means the affidavit isn't his proposed testimony. He's very clear in the petition. He's not telling us. If he's not telling us, he can't make a substantial showing on prejudice because he needs to show what he would have said and that that would have been real adulterated. You haven't raised prejudice, did you? You didn't argue prejudice in your brief, did you? We didn't. We just argued that the claim was not raised. Thank you. In order to reverse this, we would have to deal with the prejudice issue as a court, right? Correct, your honor. We're just arguing alternate grounds for affirming here. But you did not raise. So you're asking the court would be doing something that the state did not raise. Is that correct? You did not raise prejudice. So we would be actually sitting in your shoes and making arguments that the state might have made. That's correct. We didn't discuss prejudice. A third problem with this claim is that there is no evidence petitioner told his counsel he wanted to testify at any point prior to trial, only that he told her in the middle of trial. If he didn't tell counsel ahead of time, the fact that she wasn't prepared isn't official performance. If they discussed it and he decided not to testify, then there was no need to prepare. And I would note here, that's what the record seems to suggest happened, that they'd already discussed it and decided against it, because it was defense counsel herself who prompted the trial judge to admonish defendant about his right to testify. So, you know, no evidence of the proposed testimony and it's barred by NAP. So even if the court decides, you know, this claim was raised or should have been raised, there's no prejudice and dismissal was appropriate. Who has the burden of showing error or the lack thereof on appeal? Always the appellant. This is petitioner's burden here. I'll move on to the third claim, ineffective assistance for failure to call the sister Camille. This claim fails for four reasons. One, and I believe there was a question about this, no evidence petitioner told counsel prior to trial that his sister was available to testify. Well, let's talk about that because there is evidence, isn't there, in paragraph four of Rouse's affidavit, doesn't paragraphs four say I informed my attorney and then there's sentences and the sentence with regard to his sister was the sister was able to verify the fact that he had his money order. So if you read the paragraph, he says, I informed my attorney that my sister was able to verify the fact that he had his money order. Two points, your honor. It's not clear to me that the I informed my attorney at the beginning of the first sentence also applies to the later sentence about the sister. But even giving a generous reading and assuming it does, we're not saying he never told the attorney because he does say he did. We're saying there's no evidence he told her prior to trial. Well, if he didn't tell her prior to trial or if he told her, you know, when it was too late in the middle of the trial. He could have told her if it wasn't prior to trial. He could have told her in the trial yet. There wasn't trial hadn't started, right? I mean, they, you know, what he says is his attorney didn't prepare him. You know, we don't know what was going on there, but apparently he did inform her about this fact at some point. He says he did. He doesn't mention the timing and I would know. Counsel did file a witness list and I had defendants mother. It didn't have his sister. I think that suggests she wasn't told about the sister. She would have been on the list and for her to be ineffective for not calling her. She needs to know she's available to testify. And, you know, even if we read this to say he told the attorney, she could testify. We don't know the timing. And so he needed to tell her before trial so she could put him Camille on the witness list. We also have no evidence specifically that Camille is willing to testify to her affidavit or that she actually saw. Do you have any case that says that any in Illinois? Just Strickland because it needs to show prejudice. It doesn't say that there's no case in Illinois who's ever said that you're not aware of any. Are you? I'm not aware of an Illinois case, but my position is that for an attorney to be deficient for failing to call a witness, the witness has to be able to testify. Otherwise it doesn't make a difference if you don't call her and for him to suffer prejudice, she has to be able to testify. Why would she don't testify? She might not be as afraid of the threat of you're making an assumption. You're speculating. We don't need to speculate right now. We don't. We don't need to speculate. She wasn't even listed on the witness list. That's right. That's a different issue. I would just point out that, you know, this is it's not a it's not a just of a claim at this point. Petitioner has an attorney. He needs to make a substantial showing. And this is just one of the flaws in the affidavit that don't make that substantial showing. Even assuming Camille was willing to testify that she saw a petitioner with cash earlier that day, and assuming that counsel knew that, it still would have been reasonable trial strategy not to call her. Her testimony simply was not that helpful. And she was biased because she was petitioner's sister. Finally, even if she had testified about this cash, there, you know, there wouldn't have been a substantial showing of a reasonable probability of acquittal because of overwhelming evidence about petitioner's guilt. What overwhelming evidence? There were no fingerprints produced at this trial. Not the victim's fingerprints on the cash, not the defendant's fingerprints on the cash. No fingerprints. Who knows where this cash came from? That's true. There are no fingerprints. We do have both victims IDing petitioner as the robber. How do you do that? Oh, actually, one of the victims. Go ahead. One of the victims did testify that the denominations of the cash recovered from petitioner matched the denominations of the cash that was stolen from him. But in addition to that, we've got two victims IDing the robber, petitioner as the robber. The trial court found the victims were unambiguous and articulate in their description of events, and they were excellent witnesses. This is at R115 to 116. We have uncontradicted evidence that petitioner ran from the police. He attempted to throw the gun onto the rooftop but failed. The gun was immediately recovered by Petitioner Stanley. Their whole defense was a misidentification, right? That was the defense. And that's what he's talking about here, a misidentification. And so what you're doing is just accepting everything and ignoring the fact that we're at the second stage and whether we should question before us whether we proceed to the third stage. But the idea here is there was a misidentification and that this is important to have this heard. That's what they're saying. I mean, we'll decide whether we agree with her or not. But I mean, whether this is a strong case or not, I mean, identification, it was a one-man show-up, right? They brought the two victims and they said, yeah, this is the guy, right? Right at the scene or nearby. That's correct. It was a show-up. But in addition, we've got the defendants matches the clothing description that the victims gave of the robber. He's got one victim's cell phone in his front pocket. The other victim's cell phone is found on the room. Wait, wait. How do we know he has a cell phone? How do we know he has a cell phone in his pocket? Officer Stanley's testimony and then the victim's ID, the phone later. So all Petitioner has to say to this is, well, the victims could have been wrong. And, you know, someone else's print was found on the gun. The trial court specifically rejected those arguments. The court found that the victims were quote, strong in their identifications and that the absence of the print on the gun was not unusual. And it certainly didn't suggest that defendant wasn't carrying the gun. The court said there was a large quantum of evidence and the witnesses were excellent. Every one of them, four excellent witnesses, whatever Petitioner could have done here would not create a reasonable probability of acquittal. Unless the court has questions, I'd ask the court to affirm the judgment. Okay. Let's hear a brief rebuttal. Yes, thank you, Your Honor. First of all, with respect to the first claim, the jury waiver, Mr. Ross actually did in his affidavit specifically allege that his attorney told him quote, that if I did not take a bench trial, she would withdraw from representing me, end quote. So that allegation absolutely is in the petition through the affidavit. With respect to whether or not it's a threat, anytime a court is inquiring into whether a right is being voluntarily given up, it's important to ascertain whether or not someone is twisting the petitioner's arm, or in some cases, quite literally doing it, actually forcing somebody to give up a right that they don't want to get to. So when we're talking about threats, it really has to do with that kind of coercion, not simply a description of here are your options, and I realize these aren't great. And counsel of the state is correct that in the response to the state's motion to dismiss, post-conviction counsel did describe this claim as involving a threat. I would just point out that is not how Mr. Ross raised it in the petition. The word threat, again, cannot be found there. And I'm not aware of any authority saying that a throwaway line in a very brief response changes the nature of the claim fundamentally. Turning to the second issue, I want to briefly address NAP. I think that the state is overreading what NAP held. NAP is a case where the claim was contradicted by the admonitions. Our claim isn't because the admonitions didn't cover whether or not counsel prepared to question her client. But also, the contemporaneous assertion rule in NAP, to the extent that that rule is still good law in Illinois, and it's not clear from NAP necessarily that it is, as I recall, but it doesn't matter here because we do have contemporaneous assertion. Mr. Rouse said that he wanted to simply disagree with the state's position. Counsel absolutely has a duty to know what her client could say if he were called to testify so that she can give him advice about testifying and so that she can conduct a direct examination if necessary. There's no indication in the record that counsel discussed this with Rouse one way or another. So we have is her statement to Mr. Rouse in the midst of the right to testify colloquy that she wasn't prepared. Finally, with the claim related to the sister, ultimately, this is not terribly essential in light of the other claims. I would just point out a couple things. First of all, my confusion about the allegations arises from the fact that two pages of this position are missing. We tried to get them. We didn't. But we do have the allegation in the affidavit that he told his sister that she told counsel that his sister would be able to verify what he said. And just, I guess my final point would be in terms of testifying under oath. This was an affidavit. It was sworn under oath. She's subject to prosecution for perjury already. Testifying trial would not change that. We would ask the courts for words and remand for third state proceedings on these claims. Okay. Thank you, counsel, for your briefs and your arguments. It's obviously a very fact intensive case, even though it's all about procedure. It's sort of an odd combo platter that we're dealing with here. But we've been down this road before. Thank you. And we will get back to you when we have a decision.